UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

GEORGE B. BARGERON,

**Plaintiff,**

v.                          4:12-cv-71

DIANE SCHLEICHER; ROBERT
BRYSON; and THE CITY OF TYBEE
ISLAND, GEORGIA,

**Defendants.**

## ORDER

### I.  INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 28. Defendants ask for judgment as a matter of law on George Bargeron's claim of retaliation under the Age Discrimination in Employment Act ("ADEA").[1] *Id.* Defendants argue Bargeron cannot demonstrate that the age discrimination complaint he filed with the Equal Employment Opportunity Commission ("EEOC") led to Defendants retaliating against him. The Court agrees. Defendants' motion is *GRANTED*.

### II.  JURISDICTION

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331. Neither party contests personal jurisdiction or venue, and allegations sufficiently support both.

### III.  STANDARD OF REVIEW

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).

All evidence and factual inferences, however, *must* be viewed "in the light most favorable to the non-moving party," and "all reasonable doubts" resolved in his favor. *Id.* Nevertheless, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### IV.  BACKGROUND

Employed since 1992 by the City of Tybee Island ("City"), Bargeron served as City Marshal from 1994 until his termination in April 2011. ECF No. 41-1 at 2, 17.

Bargeron's troubles with his superiors began in 1997 when he received his first reprimand for raising his voice during an unpleasant conversation with a city council member. *See id.* at 3. In 2005, Bargeron received his first performance related reprimand. Then-City Manager Bob Thompson suspended Bargeron for "not . . . performing [his] job to [his] fullest potential, specifically the past due business license list, the lack of regular enforcement schedule, and the personal business conducted in City Hall." ECF No. 31 at 7. In 2007,

---

[1] Defendants also seek summary judgment in their favor on Bargeron's defamation claims. ECF No. 28. Bargeron concedes that Defendants never published the allegedly defamatory statement and thus that judgment as a matter of law in favor of Defendants Schleicher and Bryson is appropriate. *See* ECF No. 41-2 at 2 n.1. Accordingly, the Court *GRANTS* Defendants' motion with respect to Bargeron's defamation claims.

Thompson's successor, Diane Schleicher, hired as City Manager in 2006, sent Bargeron a letter scheduling a disciplinary hearing "for alleged incompetence in the performance of the duties of [his] position." ECF No. 41-1 at 10.

Schleicher later moved Bargeron's position from the zoning department to the police department. *Id.* at 16-17. Initially, James Price, chief of police at the time, served as Bargeron's superior. *Id.* at 17. In June 2010, however, Robert Bryson took over for Price. *Id.* at 26-27. "From the day Chief Bryson became interim Chief of Police in June, 2010 . . . [he] would receive complaints from City Council members about Mr. Bargeron not doing his job." *Id.* at 27. In fact, "Chief Bryson received steady complaints all the time about Mr. Bargeron." *Id.* (internal quotations omitted).

On July 1, 2010, only one month after Bryson became chief of police, Schleicher reduced Bargeron's hours from forty to thirty-five. *Id.* at 22-24. Bargeron was to spend fifteen of the thirty-five hours on code enforcement (city marshal work) and twenty hours on police administrative matters. *Id.* at 24. For the administrative work, Bargeron received "approximately $14/hour," while he received "approximately $27/hour for City Marshal work." ECF No. 41-34 at 7.

In response to the reduction in hours and pay, Bargeron filed a charge of age discrimination with the EEOC on August 11, 2010. ECF No. 41-1 at 28. A month of "quiet" ensued during which Bargeron's superiors refrained from discussing job performance issues with Bargeron. ECF No. 41-34 at 5. Schleicher then began having Bargeron "draft increasing numbers of reports of his activity." ECF No. 41-1 at 33.

The reports started as quarterly tasks but "they became monthly and the[n] weekly." *Id.* Ultimately, in January 2011, without providing Bargeron any training on the software, Chief Bryson "started having Mr. Bargeron write reports using" police incident report software "because nobody believed [Bargeron] was doing anything." *Id.* at 29, 34.

Complaints about Bargeron's job performance continued after he filed the EEOC charge. Schleicher received a complaint in November 2011 after Bargeron investigated a potential code violation at Islands Pharmacy, although that complaint later proved to be unfounded. *Id.* at 34-35. And in December 2011, "a property owner complained about Mr. Bargeron's investigation of her property." *Id.* at 35.

In particular, in late 2010 and early 2011 people complained "about trash cans being left out for some time, and . . . that people were not being cited enough" for leaving them out. *Id.* at 30. Bryson even issued a verbal reprimand because of Bargeron's "inability to perform his assigned duties" with regards to the trash can issue. ECF No. 41-14 at 2. Bargeron, however, had been "ordered to stop the trash can decal and citation program . . . and to catch up on delinquent licenses and taxes." ECF No. 41-34 at 5-6. It was only after that order that the complaints over trash can issues "began again." *Id.* at 6.

Bargeron's "workload in response to complaints and criticisms intensified in the Fall and Winter of 2010-2011." *Id.* at 6-7.

2

Although Bargeron worked more than fifteen hours per week on City Marshall work, he "was paid at the lesser rate applicable to administrative work." *Id.* at 7 (internal quotations omitted). Bargeron's administrative reduction in pay and hours occurred before the EEOC charge filing, "but assignment of higher-rate work such that the lower pay rate applied increased during the period of time after" Bargeron filed the EEOC charge "to the time of his termination." *Id.*

Everything came to a head on April 11, 2011, eight months after Bargeron's EEOC charge. Almost two weeks prior, Bargeron wrote a police report of an investigation he made into the local IGA grocery store's automatic gate. *See* ECF No. 41-20. Bryson believed that certain statements in the report represented either lies or incompetency on the part of Bargeron. *See* ECF No. 41-1 at 49. In part because two City police officers had recently been terminated for falsifying police reports, Bryson elected to terminate Bargeron because of the March 28 report. *See* ECF No. 34 at 25-27.

Bargeron appealed his termination and on April 21, Schleicher held a hearing on the matter. ECF No. 41-27 at 1. Although Schleicher withdrew the grounds Bryson gave for the termination, she ultimately upheld it "based upon the inadequate" fact-finding by Bargeron prior to writing the incident report at issue. *Id.*

Bargeron filed suit in response in state court on February 9, 2012. ECF No. 1-1 at 2. Defendants properly removed to this Court on March 14, 2012. *See* ECF No. 1. After this Court's Order dismissing certain of Bargeron's claims, Defendants filed the motion now before the Court.

## V. DISCUSSION

The ADEA prohibits, among other things, discrimination by an employer against an individual because that individual "has opposed any practice made unlawful by" the ADEA, "or because such individual . . . has made a charge . . . or participated in any manner in" a proceeding related to age discrimination. 29 U.S.C. § 623(d). In other words, an employer cannot retaliate against an employee for their role in reporting age discrimination to the government. *See Hargrett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 764 (11th Cir. 1995) (noting that "[a]n employer violates the [ADEA] if it retaliates against an employee for filing an EEOC charge.").

Where, as here, no direct evidence of retaliation exists, the burden shifting framework of *McDonnell-Douglas v. Green*[2] applies. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (noting that "the principles of law applicable to cases arising under very similar provisions of Title VII" apply to ADEA claims as well); *see also Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979) (concluding that Congress intended construction of the ADEA to follow that of Title VII where provisions of both are "almost *in haec verba*."). The first prong of that framework requires Bargeron to establish "a prima facie case [of retaliation] by showing: (1) a statutorily protected expression, (2) an adverse employment action, and (3) a causal link

---

[2] 411 U.S. 792, 793 (1973).

between the protected expression and the adverse action." *Hairston*, 9 F.3d at 919.

### A. The Prima Facie Case

The evidence Bargeron presents establishes the first two elements—statutorily protected expression, and adverse employment action—of a prima facie case of retaliation. Bargeron engaged in protected expression when he filed a charge of age discrimination with the EEOC on August 11, 2010. ECF No. 41-1 at 28; *See Hairston*, 9 F.3d at 920. And Bargeron undeniably suffered an adverse employment action when Bryson discharged him on April 11, 2011. *See* ECF No. 41-27. The evidence, viewed in the light most favorable to Bargeron, however, also demonstrates Bargeron suffered another relevant adverse employment action.[3]

Bargeron avers that after he filed his charge with the EEOC he was made to do City Marshal work "but was paid at the lesser rate applicable to 'administrative work.'" ECF No. 41-1 at 40. Defendants correctly note that Bargeron's original reduction in pay and hours came before the EEOC charge filing, and argue that therefore the reduction could not have been in retaliation for the EEOC charge. *See* ECF Nos. 41-1 at 22, 24; 28 at 19.

But Bargeron is not attempting to categorize the pre-EEOC charge reduction in pay and hours as an adverse employment action; rather, Bargeron's argument—once again construed, as it must be, in the light most favorable to Bargeron, *see Feliciano*, 707 F.3d at 1247—is that he effectively received a second, post-EEOC charge, decrease in pay when forced to do city marshal work without receiving the rate of pay promised for that work. Such a decrease in pay is an adverse employment action. *See, e.g., Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998) (noting that when a plaintiff alleges a "reduction in pay," "the plaintiff has alleged an employment action that would appear adverse to any reasonable person.").

With the statutorily protected expression and adverse employment action elements of a prima facie case established, all that remains for Bargeron to show is that the expression caused the adverse action. *See Hairston*, 9 F.3d at 919. This causation element "require[s] merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden Cnty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985), *cert. denied*, 474 U.S. 981 (1985) (internal quotations omitted).

"At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." *Hairston*, 9 F.3d at 920 (quoting

---

[3] Bargeron's primary argument on the element of adverse employment action is that the sum of Defendants' post-EEOC charge actions constitute an adverse action. *See* ECF No. 41-2 at 18; *see also Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998) (holding that, considered collectively, being listed as a no-show at work on a day off; written reprimands; and soliciting coworkers for negative comments about the plaintiff constituted an adverse employment action). The Court disagrees. Increased reporting requirements, pressure to perform preexisting job duties, citizen complaints about job performance, and a supervisor stating that Schleicher wanted Bargeron gone, do not, even considered collectively, cross the "threshold level of substantiality that must be met" for a series of events to constitute an adverse employment action. *Wideman*, 141 F.3d at 1456; ECF No. 41-2 at 17.

4

*Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)). And though the "burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action[,] . . . mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

For purposes of summary judgment, Bargeron has shown enough to establish a causal connection between filing the EEOC charge and an adverse employment action. First, Schleicher knew of Bargeron's EEOC charge. *See* ECF No. 33 at 43. And second, Bargeron puts forth evidence showing a close temporal relationship between the EEOC charge and an adverse employment action.

Certainly the eight months between the EEOC charge and Bargeron's termination cannot alone demonstrate causation. *See Thomas*, 506 F.3d at 1364 (finding "[a] three to four month disparity between the statutorily protected expression and the adverse employment action" not to be enough). But Bargeron avers that a second adverse action occurred shortly after the EEOC charge—namely, the decrease in pay from doing city marshal work for administrative pay. ECF No. 41-1 at 40.

Bargeron claims that he began to commit more than fifteen hours per week to city marshal work beginning "in the Fall and Winter of 2010-2011." *Id.* at 39. That time period is very broad of course, but construed in the light most favorable to Bargeron it could be that his decrease in pay came close to the filing of the EEOC charge. Whether in actuality it did is a question of fact inappropriate for disposition on summary judgment.

With Bargeron having established a prima facie case of discrimination, the Court turns to the remaining prongs of the *McDonnell-Douglas* framework.

### B. Rebuttal and Pretext

If the plaintiff, as in this case, establishes a prima facie case, the defendant then has the burden of rebutting the presumption of retaliation by producing legitimate, non-retaliatory reasons for the adverse employment action. *Hairston*, 9 F.3d at 919. "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Id.* (quoting *Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

The plaintiff then has the opportunity to show the defendant's proffered non-retaliatory reasons are pretextual. *Id.* at 920. Despite the "burden shifting" of the *McDonnell-Douglas* framework, the ultimate burden of persuasion, of showing that the defendant retaliated because of plaintiff's protected expression, *always* lies with the plaintiff. *See, e.g., Kragor v. Takeda Pharmaceuticals Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).

#### 1. Rebuttal

Defendants have produced sufficient evidence of legitimate, non-discriminatory reasons for both adverse employment actions taken against Bargeron. First, Defendants assert they terminated Bargeron for incompetence generally, and "based upon the inadequate" fact-finding in a police report Bargeron submitted specifically. ECF No. 41-27 at 1. And second, Defendants claim

5

that Schleicher and Bryson did not know of Bargeron working more than fifteen hours per week on city marshal work and in fact "expressly directed the opposite." *See* ECF No. 43 at 2-3. Without knowledge of Bargeron performing marshal work for administrative pay, Defendants argue, they could not possibly have instigated that situation in retaliation for Bargeron's EEOC charge. *Id.*

Rebuttal of a prima facie case of retaliation typically involves a defendant offering a reason for taking the adverse employment action. *See, e.g., Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 (11th Cir. 1997) (finding legitimate the following reasons for promoting another employee instead of plaintiff: (1) the other employee had more experience; (2) supervisory recommendations supported the other employee; and (3) the other employee's own supervisory experience). Defendants offer just such a reason for Bargeron's termination—his continual incompetence in performing the duties of city marshal. *See, e.g.*, ECF No. 36 at 2-3.

Defendants' reason for Bargeron's alleged decrease in pay, however, is more of a flat denial that Defendants acted as Bargeron claims. It is not an explanation for why they did act.

Nevertheless, lack of knowledge goes to show that Defendants did not possess a retaliatory intent or, for that matter, have anything to do with Bargeron performing high dollar work for low dollar pay. Most importantly, Defendants alleged lack of knowledge functions similarly to more typical legitimate nondiscriminatory reasons—it is evidence on which a reasonable jury could base a finding that Defendants did not retaliate against Bargeron. *See Combs*, 106 F.3d at 1528 (holding that to satisfy the burden of rebutting plaintiff's prima facie case, an "employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the" adverse employment action had not occurred because of retaliatory animus). The Court therefore finds that Defendants satisfied their burden of producing a legitimate nondiscriminatory reason for Bargeron's alleged decrease in pay.

*2. Pretext*

In conducting a pretext analysis, "courts examine whether the evidence reveals such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1307 (N.D. Ga. 2009) (quoting *Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 770 (11th Cir. 2005) (internal quotations omitted). But an employee must meet the employer's proffered reason "head on and rebut it[.] . . . [T]he employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).

Bargeron offers several pieces of evidence to show that his termination and other alleged adverse employment actions were motivated by retaliatory animus: (1) the testimony of Jonathan Lynn that, three to four months prior to Bargeron's EEOC charge, Schleicher told Lynn that he would have no problem working as city marshal

because Lynn was "young enough to handle this position." ECF No. 41-42 at 1; (2) Lynn's testimony that in May 2010 Schleicher told him of Bargeron's reduction in hours and pay and that the reduction would not affect Bargeron because "he was close enough to retirement age." *Id.* at 2; (3) testimony from Steele Knudson, hired by the City the month after Bargeron's dismissal, that a City employee told him Schleicher fired Bargeron because he was too old. *See* ECF No. 41-40; and (4) a supervisor's comment in February 2011 that "[you know] where this is going, they just want you gone, they want you to quit." ECF No. 41-1 at 39.[4]

Bargeron's evidence does not directly persuade "that a [retaliatory] reason more likely motivated" Defendants. *Hairston*, 9 F.3d at 920. Defendants aver they specifically ordered Bargeron *not* to work more than fifteen hours per week as city marshal and that if he did work more than that, they had no idea. *See* ECF No. 43 at 2-3. Bargeron's evidence of retaliatory intent does not even address that explanation, much less demonstrate pretext.

Bargeron's evidence also does not inferentially show that Defendant's "proffered explanation is unworthy of credence." *Hairston*, 9 F.3d at 920. Lynn's statement that Schleicher told him he was "young enough to handle th[e] position," bears on Lynn's age, not Bargeron's. Reading into that to mean Schleicher thought Bargeron too old is a bridge too far. Lynn's statement regarding Schleicher's May 2010 explanation for reassigning Bargeron and lowering his pay does not demonstrate retaliatory animus at all, not to mention the statement came approximately three months before Bargeron filed his EEOC charge. Knudson's testimony is simple, inadmissible, hearsay.[5] And a comment that "they want you to quit" says nothing more than Bargeron's superiors wanted him to quit. It does not suggest that desire had anything to do with Bargeron's EEOC charge, particularly in light of the fact that the statement came six months after the charge's filing. *Compare* ECF No. 41-1 at 39, *with id.* at 28.

The evidence demonstrates that Bargeron and his superiors—be it Schleicher, Bryson, or another supervisor over the years—often butted heads. The evidence also suggests Schleicher (and others) found Bargeron incompetent. A more generous reading leads to the conclusion that perhaps Schleicher simply did not like Bargeron. She certainly did not want him as an employee of the City. But no evidence raises a genuine issue of fact as to whether Bargeron suffered retaliation as a result of filing an EEOC charge of age discrimination.

Bargeron's evidence, taken as a whole, and taken in the light most favorable to Bargeron, cannot form the basis for a finding

---

[4] Bargeron offers other evidence he alleges shows retaliatory animus, such as the City's adoption, two months before Bargeron's termination, of an ordinance allowing at-will termination. *See, e.g.*, ECF No. 41-2 at 5-9. None of that evidence, however, relates to the adverse employment action—an effective decrease in pay—the Court finds capable of constituting part of a prima facie case of retaliation. Instead, the evidence relates primarily to Bargeron's termination and to Bargeron's totality of the circumstances theory of adverse employment action.

[5] Hearsay is a statement a declarant makes outside of testifying that is offered as evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c).

7

of fact that would "allow a jury to find by a preponderance of the evidence that [Bargeron] has established pretext, and that the action taken was in retaliation for engaging in the protected activity." *Hairston*, 9 F.3d at 921. Judgment as a matter of law therefore is appropriate.

### VI. CONCLUSION

Despite establishing a prima facie case of retaliation, Bargeron has not rebutted Defendants' proffered legitimate nondiscriminatory reason for Bargeron's effective decrease in pay subsequent to his filing an EEOC charge. His ADEA retaliation claims therefore fail as a matter of law. Defendants' motion for summary judgment is ***GRANTED***.

This 30 day of April 2013.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA